UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHEILA JAMES, | CASE NO. 5:16CV63 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL,[1] ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

    Plaintiff Sheila James ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Disability Insurance Benefits ("DIB").  ECF Dkt. #1.  In her brief on the merits, filed on April 23, 2016, Plaintiff presents three issues for review, namely, whether the ALJ: (1) violated the treating physician rule; (2) erred by relying on a post-hearing report from a consulting physician; and (3) erred by failing to consider the full record when evaluating Plaintiff's residual functional capacity ("RFC").  ECF Dkt. #13 at 1.  Defendant filed a response brief on July 6, 2016.  ECF Dkt. #17.  Plaintiff did not file a reply brief.

    For the following reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case to the ALJ for proper evaluation of the opinions of Dr. Tomcik and Dr. Zuchouski, as explained in the instant Memorandum Opinion and Order.

**I.    FACTUAL AND PROCEDURAL HISTORY**

---

[1]On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

Plaintiff filed an application for DIB, alleging disability beginning February 15, 2008.[2] ECF Dkt. #11 ("Tr.") at 536.[3]  The claim was denied initially and upon reconsideration on January 31, 2012, and February 19, 2013, respectively. *Id.*  Plaintiff then requested a hearing before an ALJ, and a video hearing was held on May 25, 2014. *Id.*  On July 21, 2014, the ALJ denied Plaintiff's application for DIB. *Id.*  As an initial matter, the ALJ indicated that after the hearing, he sent an interrogatory to a medical expert, Alfred Jonas, M.D., who then sent a response. *Id.*  The ALJ stated that Plaintiff's counsel responded with argument, but did not request a supplemental hearing, and therefore, the medical expert's response was added to the medical record, which was then closed. *Id.*

Continuing, the ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2014.  Tr. at 538.  The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of January 27, 2010, through her date last insured, June 30, 2014.  *Id.*  According to the ALJ, through the date last insured, Plaintiff had the following severe impairments: fibromyalgia; degenerative disc disease; depression; and anxiety.  *Id.*  Following the determination of Plaintiff's severe impairments, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 539.

After considering the record, the ALJ found that, through the date last insured, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations: no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs;

---

[2]In his decision, the ALJ indicated that Plaintiff's alleged disability onset date was February, 15, 2008.  Tr. at 536, 548.  The ALJ also stated that the alleged disability onset date was January 27, 2010, the amended alleged disability onset date.  Tr. at 538; *see id.* at 558-59, 725.  It appears from the record that the ALJ reviewed evidence based on the amended alleged disability onset date, despite his use of both the original alleged disability onset date and the amended alleged disability onset date in the decision.

[3]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled.  This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

occasionally balancing, stooping, kneeling, crouching, or crawling; no exposure to hazards such as unprotected heights or dangerous machinery; jobs involving simple, routine, repetitive tasks in a routine and predictable work setting with only occasional superficial contact with others. Tr. at 541-42. Continuing, the ALJ determined that Plaintiff was unable to perform any past relevant work. *Id.* at 546. The ALJ stated that Plaintiff was a younger individual on the date last insured, had a high school education and was able to communicate in English, and that the transferability of jobs skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* at 546-47. Next, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Tr. at 547. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from February 15, 2008, the alleged onset date, through June 30, 2014, the date Plaintiff was last insured. *Id.* at 548. At issue is the decision of the ALJ dated July 21, 2014, which stands as the final decision.

On January 12, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on April 23, 2016, presenting three issues for review, namely, whether the ALJ: (1) violated the treating physician rule; (2) erred by relying on a post-hearing report from a consulting physician; and (3) erred by failing to consider the full record when evaluating Plaintiff's RFC. ECF Dkt. #13 at 1. Defendant filed a response brief on July 6, 2016. ECF Dkt. #17. Plaintiff did not file a reply brief.

## II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

After finding that Plaintiff last met the insured status requirement of the Social Security Act on June 30, 2014, the ALJ determined that she had not engaged in substantial gainful activity from the alleged onset date of January 27, 2010, through her date last insured, June 30, 2014. Tr. at 538. The ALJ found that Plaintiff had severe impairments, as stated above. *Id.* Continuing, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, stating that he considered Listing 1.02 (major dysfunction of a joint), Listing 1.04 (disorders of the spine), Listing 12.04 (depressive,

-3-

bipolar, and related disorders), and Listing 12.06 (anxiety and obsessive-compulsive disorders). *Id.* at 539-40.

The ALJ also indicated that he considered the "paragraph B" criteria of the applicable listings, and then discussed Plaintiff's activities of daily living, social functioning, concentration, persistence, and pace, as well as any episodes of decompensation. *Id.* at 540-41. Specifically, the ALJ found that Plaintiff had mild restriction in activities of daily living. *Id.* at 540. The ALJ stated that: the state agency experts indicated that Plaintiff would have mild difficulties in this area of functioning, and that she was not limited to a greater degree; Plaintiff reported the ability to do laundry and cook daily, as well as care for her two young children; and Plaintiff went to church and twelve-step meetings weekly, and socialized with family and friends. *Id.* Accordingly, the ALJ determined that Plaintiff had some limitations with regard to performing activities of daily living, but that those limitations were no more than mild. *Id.*

In social functioning, the ALJ found that Plaintiff had moderate difficulties. Tr. at 540. The ALJ stated that: the state agency experts indicated that Plaintiff would have moderate difficulties in this area of functioning; Plaintiff was able to attend church and twelve-step meetings weekly, as well as socialize with family and friends; Plaintiff was appropriate with her representative and her attorney at the hearing; there was no evidence that Plaintiff had any significant difficulties interacting with any medical professional with whom she consulted; and Plaintiff testified at the hearing that she had anxiety and was cordial but standoffish around others. *Id.*

With regard to concentration, persistence, or pace, the ALJ found that Plaintiff had moderate difficulties. Tr. at 540. Specifically, the ALJ stated that: the state agency experts indicated that Plaintiff would have moderate difficulties in this area of functioning; Plaintiff had demonstrated the ability to sustain focused attention to do laundry, cook, and care for two children, as well as attend church and twelve-step meetings; Plaintiff did not appear to have any difficulty maintaining focus during her hearing and was able to appropriately answer all questions asked by the ALJ or the other parties involved; and Plaintiff testified that she had trouble focusing and had anxiety when stressed or overwhelmed. *Id.* As for episodes of decompensation, the ALJ stated that Plaintiff had not experienced any episodes of decompensation of extended duration. Tr. at 541. The ALJ also stated

that he considered the "paragraph C" criteria of the applicable listings, and determined that the evidence did not establish the presence of the necessary criteria. *Id.*

The ALJ then explained the RFC finding, as described above. Tr. at 541-46. First, the ALJ stated that prior to the hearing, Plaintiff submitted a function report stating that constant pain limited her ability to sit, stand, and walk. *Id.* at 542. Continuing, the ALJ noted that at the hearing, Plaintiff testified that she could not work full-time due to pain, anxiety, and depression. *Id.* In terms of medical evidence as to Plaintiff's pain, the ALJ indicated that magnetic resonance imaging ("MRI") performed in July 2012 revealed that Plaintiff had a herniated disc and a right annular tear, although it was determined that surgery was not needed. *Id.* According to the ALJ, despite these conditions, physical examinations had been largely unremarkable, with findings that Plaintiff exhibited a normal gait, normal muscle strength, and no muscle atrophy or spasms. *Id.* The ALJ indicated that the only clinical deficits noted were a limited range of motion in Plaintiff's dorsolumbar spine and hips. *Id.* Moreover, the ALJ stated that the record showed that Plaintiff had improved with medication, which allowed her to function. *Id.* Next, the ALJ indicated that x-rays taken in February 2014 revealed that Plaintiff had mild degenerative changes in her left knee, however, on physical examination she continued to be in no distress and had a normal gait and joint inspection. Tr. at 542.

After discussing Plaintiff's physical impairments, the ALJ indicated that Plaintiff was diagnosed with major depression and social phobia. Tr. at 543. The ALJ stated that in January 2012, Plaintiff underwent a psychological consultative evaluation performed by Herschel Pickholtz, Ed.D., during which she endorsed mild symptoms of depression and a mild level of anxiety that was triggered by being around people and making mistakes. *Id.* Additionally, the ALJ indicated that Plaintiff reported the ability to engage in activities of daily living (doing laundry, cooking, caring for two young children, socializing, and attending church and twelve-step programs) with treatment. *Id.*

Continuing, the ALJ found that Plaintiff did experience symptoms resulting from her physical and mental impairments, but her impairments did not render her disabled. Tr. at 543. The ALJ stated that treatment records indicated that medication had improved Plaintiff's pain and provided decent control of her fibromyalgia. *Id.* Next, the ALJ indicated that Plaintiff had not had

-5-

any episodes of severe pain, and that treatment records from 2014 showed that she denied experiencing joint or back pain, which were the very symptoms that she alleged prevented her from working. *Id.* The ALJ stated that he gave Plaintiff the benefit of the doubt regarding her degenerative disc disease because the impairment had not lasted at a severe level for twelve months, and, moreover, x-rays revealed that there were only mild degenerative changes and Plaintiff continued to display a normal gait. *Id.*

Regarding Plaintiff's mental health impairments, the ALJ stated that counseling records described the severity of her depression as mild or moderate, and, while this severity rating established limitations, it did not indicate disabling mental health symptoms. Tr. at 540. According to the ALJ, it was notable that Plaintiff did not have any inpatient hospitalizations, which suggested that her mental impairments did not support more intensive treatment. *Id.* Continuing, the ALJ indicated that Plaintiff testified at the hearing that she was standoffish and had anxiety around people, but, despite this testimony, her ability to attend church and twelve-step programs, as well as socialize with friends and family, suggested that this was not disabling. *Id.* The ALJ noted that Plaintiff also alleged trouble focusing and anxiety when feeling overwhelmed or under pressure, yet was able to cook, do laundry, and care for two young children, which indicated an ability to function in at least some situations. *Id.* Further, the ALJ stated that treatment records showed that medication had improved Plaintiff's mood and that she had a normal mood with no impairment to concentration. *Id.* Next, the ALJ indicated that Plaintiff stopped working for reasons other than her pain or mental health impairments, and that it was inconsistent to find that she had debilitating physical pain and mental symptoms that left her unable to function when she was able to engage in the aforementioned activities. *Id.* According to the ALJ, Plaintiff's daily activities, combined with her non-disability related reason for quitting her job, further weakened her credibility. *Id.* The ALJ then determined that Plaintiff was less restricted than she had otherwise indicated. *Id.*

Next, the ALJ stated that Plaintiff had a history of polysubstance abuse, which was the reason that she regularly attended twelve-step meetings. Tr. at 543. However, the ALJ found that the evidence indicated that Plaintiff would have continued to have physical and mental health issues

-6-

regardless of her history of substance abuse, and substance abuse did not appear to exacerbate her symptoms.  *Id.* at 543-44.

The ALJ indicated that in September 2012, a treating source, Colleen Tomcik, M.D., submitted an opinion stating that Plaintiff could: lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk for four hours with unlimited sitting; rarely climb, balance, stoop, crouch, or crawl; and occasionally kneel, reach, handle, and push/pull.  Tr. at 544.  Further, the ALJ stated that Dr. Tomcik opined that Plaintiff must avoid exposure to moving machinery, and would need a rest break and sit/stand option.  *Id.*  The ALJ indicated that in November 2012, Dr. Tomcik submitted a similar opinion.  *Id.*  Due to the treating relationship, the ALJ gave Dr. Tomcik's opinion partial weight insofar as it was consistent with the determinations made in the decision.  *Id.*  However, the ALJ found that Dr. Tomcik's opinion was not consistent with the record as a whole, including Dr. Tomcik's own statement that Plaintiff's pain severity was only moderate.  *Id.*

Continuing, the ALJ indicated that in January 2014, another treatment provider, Haitham Azem, M.D., submitted an opinion stating that Plaintiff could: lift/carry five to ten pounds occasionally and less than five pounds frequently; stand/walk for one hour, fifteen minutes at a time; sit for one hour, fifteen minutes at a time; rarely climb, balance, stoop, crouch, kneel, crawl, push/pull, and perform fine manipulation; and occasionally reach and perform gross manipulation. Tr. at 544.  The ALJ stated that Dr, Azem further opined that Plaintiff would: need to shift position at will, elevate her legs, and take three unscheduled breaks per day; and experience pain that would interfere with concentration, cause Plaintiff to be off task, and cause absenteeism.  *Id.*  Based on the above, the ALJ afforded Dr. Azem's opinion little weight because the opinion was inconsistent with Dr. Azem's treatment records, which indicated that Plaintiff denied experiencing back and joint pain, and had no difficulty walking.  *Id.*  The ALJ stated that treatment records were entitled to more weight than statements that were prepared exclusively for compensation purposes, and, moreover, Dr. Azem's opinion was not consistent with the record as a whole, which showed that Plaintiff was able to care for two young children, cook, do laundry, and attend twelve-step meetings.  *Id.*

Next, the ALJ indicated that in January 2012, Plaintiff underwent a physical consultative examination performed by Adi Gerblich, M.D.  Tr. at 544.  The ALJ stated that Dr. Gerblich opined

-7-

that he did not feel that Plaintiff needed to be limited to sedentary work.  *Id.*  Significant weight was afforded to Dr. Gerblich's opinion by the ALJ, who stated that the opinion was consistent with other objective evidence, including Dr. Gerblich's thorough examination of Plaintiff.  *Id.* at 544-45.  The ALJ also noted that in January 2012, a state agency doctor, Victoria Eskinazi, M.D., reviewed the then existing medical record and opined that Plaintiff did not have a severe physical impairment.  *Id.* at 545.  The ALJ afforded Dr. Eskinazi's opinion little weight because the evidence received at the hearing demonstrated that Plaintiff did have a physical impairment.  *Id.*

Continuing, the ALJ indicated that a state agency physician, Eli Perencevich, D.O., reviewed the then existing medical record in February 2013 and found that Plaintiff could perform light work with the following limitations: occasionally climbing ramps or stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; and avoiding all exposure to hazards.  Tr. at 545.  The ALJ stated that he considered the assessment offered by Dr. Perencevich and found that it was consistent with the record, and thereby adopted Dr. Perencevich's Functional Capacity Assessment.  *Id.*  Next, the ALJ stated that Rakesh Ranjan, M.D., submitted an opinion stating that Plaintiff had fair/poor: ability to make occupational adjustments; intellectual functioning; and ability to maintain personal and social adjustments.  *Id.*  Further, the ALJ noted that Plaintiff was good at maintaining her appearance.  *Id.*  The ALJ stated that little weight was given to Dr. Perencevich's opinion because it was not consistent with evidence showing that Plaintiff's depression improved with medication and the mental health impairments caused no more than moderate symptoms.  *Id.*

After discussing Dr. Perencevich's opinion, the ALJ turned to the opinion of another treating source, Sara Zuchouski, M.D., who opined that Plaintiff could occasionally/rarely make occupational adjustments and personal/social adjustments, and could occasionally function intellectually.  Tr. at 545.  The ALJ afforded little weight to Dr. Zuchouski's opinion, stating that the opinion was not supported by the objective evidence or credible subjective evidence.  *Id.*

Next, the ALJ discussed the opinion of Dr. Pickholtz, who, after an examination, stated that Plaintiff: had a light impairment in her ability to understand, remember, carry out instructions, and perform one to three step tasks; would function better in an environment not involving large groups;

-8-

and would related better to small groups and a work environment that was not highly stressful. Tr. at 545. The ALJ also indicated that a second examination was performed, and afterwards Dr. Pickholtz opined that Plaintiff: had a slight impairment in her ability to understand, remember, and carry out instructions; and was somewhat impaired in her ability to perform one to three step tasks, relate to others, and tolerate work pressures. *Id.* Significant weight was afforded to Dr. Pickholtz's opinions because, according to the ALJ, the opinions were consistent with the objective evidence and the credible subjective evidence, including evidence from Dr. Pickholtz's two examinations of Plaintiff. *Id.*

Continuing, the ALJ stated that he sent Alfred Jonas, M.D., a medical expert, a medical interrogatory in April 2014, after the hearing had been held. Tr. at 545. The ALJ indicated that Dr. Jonas opined that Plaintiff had: no restrictions in activities of daily living; no difficulty maintaining concentration, persistence, or pace; and a marked difficulty in maintaining social functioning. *Id.* at 545-46. The ALJ stated that Dr. Jonas's opinion further supported the notion that Plaintiff's mental health impairments were not disabling, and indicated that he gave the opinion some weight because Plaintiff's ability to attend church and twelve-step meetings, as well as socialize with family and friends, clearly demonstrated that she did not have a marked restriction in social functioning. *Id.* at 546. According to the ALJ, Plaintiff's testimony at the hearing regarding her trouble focusing and anxiety when under pressure showed that she was more limited in her ability to maintain concentration, persistence, and pace than opined by Dr. Jonas. *Id.*

The ALJ then indicated that in January 2012 a state agency doctor, Tonnie Hoyle, Psy.D., reviewed the existing medical evidence relating to Plaintiff's alleged mental heath impairments. Tr. at 546. According to the ALJ, Dr. Hoyle opined that Plaintiff had mild impairments in activities of daily living, and moderate impairments in maintaining social functioning and maintaining concentration, persistence, and pace. *Id.* The ALJ stated that in October 2012, Aracelis Rivera, Psy.D., another state agency doctor, reviewed the record and affirmed Dr. Hoyle's assessment. *Id.* Continuing, the ALJ indicated that he reviewed the assessments and found them to be consistent with the objective evidence and credible subjective evidence. *Id.* The ALJ stated that he adopted the assessments of Dr. Hoyle and Dr. Rivera, namely, that Plaintiff's mental impairment was non-

-9-

severe and did not cause any significant limitations in functioning. *Id.* Additionally, the ALJ noted that in addition to being mental health experts, Dr. Hoyle and Dr. Rivera were disability program experts. *Id.*

Following the discussion of the RFC determination, the ALJ found that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged disability onset date, had at least a high school education and was able to communicate in English, and that the transferability of jobs skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. Tr. at 2546-47. Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 547. For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 15, 2008, the alleged onset date, through the date of the decision. *Id.* at 548.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

### V.  LAW AND ANALYSIS

#### A.  Treating Physician Rule

Plaintiff first asserts that the ALJ violated the treating physician rule, resulting in a RFC finding that was not supported by substantial evidence. ECF Dkt. #13 at 9-14. An ALJ must give

-11-

controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less

-12-

than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Plaintiff presents the same underlying argument as to how the ALJ violated the treating physician rule regarding the opinions of Dr. Tomcik, Dr. Azem, and Dr. Zuchouski.  Tr. at 10-14. Essentially, Plaintiff asserts that each of these physicians was a treating physician, and the ALJ failed to provide "good reasons" for affording their opinions less than controlling weight.  *Id.*  The ALJ's treatment of each of these treating sources, and Defendant's arguments relating each treating source, will be addressed in turn.

The Court is inclined to first address the ALJ's treatment of the opinion provided by Dr. Azem, despite Plaintiff's argument beginning with Dr. Tomcik.  The ALJ afforded little weight to Dr. Azem's opinion, stating:

> [The ALJ] gives [Dr. Azem's] opinion little weight because it is not consistent with Dr. Azem's treatment records that indicate that [Plaintiff] denied experiencing back and joint pain and had no difficulty walking.  Treatment records are entitled to more weight than statements that were prepared exclusively for compensation purposes. Moreover, this opinion is not consistent with the record as a whole, which indicates that [Plaintiff] was able to care for two young children, cook, do laundry and attend 12-step meetings.

Tr. at 544 (internal citations omitted).  Plaintiff claims that the ALJ provided only two justifications for his decision to afford Dr. Azem's opinion little weight, and only cited to a single treatment note from Dr. Azem stating that Plaintiff did not experience joint or back pain, or difficulty walking. ECF DKt. #13 at 12.  Continuing, Plaintiff states that the ALJ ignored all the other treatment notes that documented her medical problems and cherry-picked a note from a single treatment session as substantial evidence to discount the entirety of Dr. Azem's opinion.  *Id.*

A review of the ALJ's record reveals that the ALJ cited to treatment notes from two separate visits Plaintiff made to Dr. Azem, and that during both sessions Dr. Azem indicated that Plaintiff did not exhibit back pain, joint pain, or difficulty walking. Tr. at 1550, 1563.  Plaintiff provide two additional citations to treatment notes in the medical record that she alleges the ALJ ignored, however, one portion of the medical record cited by Plaintiff indicates that Dr. Azem made the same findings as the medical records cited by the ALJ, namely, that Plaintiff did not experience back pain, joint pain, or difficulty walking.  ECF Dkt. #13 at 12 (citing Tr. at 1188).  The other portion of the

-13-

medical record that Plaintiff claims the ALJ ignored only indicates an impression of "chronic low back shoulder pain management." *Id.* (citing Tr. at 1211). Plaintiff fails to elaborate on how this impression invalidates the ALJ's treatment of Dr. Azem's opinion, especially after the ALJ cited portions of the medical record supporting the finding that the opinion was inconsistent with Dr. Azem's treatment notes.

Further, the ALJ noted that Dr. Azem's opinion was not consistent with Plaintiff's activities of daily living, which included caring for two young children, cooking, doing laundry, and attending twelve-step meetings. Tr. at 544. Based on this notation, Plaintiff argues that the ALJ erred by exaggerating the evidentiary value of her ability to perform some activities of daily living, and that those activities did not equate to an ability to perform full-time work. ECF Dkt. #13 at 12-13. Despite Plaintiff's assertions, the ALJ did not equate her activities of daily living with the ability to perform full-time work; rather, the ALJ only indicated that these activities were inconsistent with the limitations opined by Dr. Azem. Tr. at 544. The ALJ did not err by considering Plaintiff's stated activities of daily living when evaluating the opinion of Dr. Azem.

In summary, the ALJ stated that he gave little weight to the opinion of Dr. Azem, citing medical evidence indicating that Plaintiff denied experiencing back or joint pain, and had no difficulty walking in support of his determination that Dr. Azem's opinion was inconsistent with the treatment records. Tr. at 544. Further, the ALJ determined that Plaintiff's stated activities of daily living were inconsistent with Dr. Azem's opinion. *Id.* For these reasons, the Court finds that the ALJ provided good reasons for discounting Dr. Azem's opinion.

Although the ALJ provided good reasons for discounting Dr. Azem's opinion, he did not provide good reasons for discounting the opinions of Dr. Tomcik or Dr. Zuchouski, both of whom the ALJ recognized as treating sources. *See* Tr. at 544-45. After stating the substance of Dr. Tomcik's opinion, the ALJ stated:

> Due to the treating relationship, the [ALJ] gives [Dr. Tomcik's] opinion some weight insomuch that it is consistent with the documentation made herein. However, this opinion is not consistent with the record as a whole, including Dr. Tomick's own statement that the [Plaintiff's] pain severity was only moderate.

-14-

*Id.* at 544. The ALJ provided no additional explanation as to why he was discounting Dr. Tomcik's opinion, despite the treating source relationship with Plaintiff. Defendant contends that the ALJ adopted portions of Dr. Tomcik's opinion, and that "[w]hile the ALJ did not lay out the record inconsistencies in the paragraph addressing Dr. Tomcik's opinion, he did so earlier in his decision and was not required to repeat those reasons." ECF Dkt. #17 at 5. Specifically, Defendant points to two paragraphs of the ALJ's decision addressing Plaintiff's postural orthostatic tachycardia syndrome and hyperthyroidism contained in the ALJ's discussion of Plaintiff's non-severe impairments. *Id.* Defendant also points to other medical evidence in the record in an attempt to support a conclusion that Dr. Tomcik's decision was entitled to less than controlling weight. *Id.* at 5-7.

The problem with Defendant's argument is that the ALJ did not mention any of this medical evidence when addressing Dr. Tomcik's opinion. *See* Tr. at 544. Per the Sixth Circuit, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend*, 375 Fed.Appx. at 551. The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions and to explain "precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks*, 413 Fed.Appx. at 864 (quoting *Rogers*, 486 F.3d at 243 ). The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. Additionally, the Sixth Circuit has held:

> Simply put, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.

*Friend*, 375 Fed.Appx. at 552.

Defendant provides citations to medical evidence in an attempt to make clear the reasons the ALJ afforded Dr. Tomcik's opinion less than controlling weight, however, Defendant cannot rely

-15-

on post hoc rationalizations to remedy the ALJ's deficient discussion of the weight afforded to Dr. Tomcik's opinion.  In his decision, the ALJ indicated that he gave Dr. Tomcik's opinion "partial weight insomuch that is consistent with the determination made herein."  Tr. at 544.  This circular rational for assigning lesser weight to Dr. Tomcik's opinion is insufficient to properly explain the reasons the opinion was afforded less than controlling weight.  The only additional guidance provided by the ALJ as to why Dr. Tomcik's opinion was afforded less than controlling weight is a single citation to an instance where Dr. Tomcik stated that Plaintiff's pain severity was only moderate.  *Id.* (citing Tr. at 1123).  The ALJ provided no explanation as to how he believed that a finding of moderate pain invalidated the limitations as opined by Dr. Tomcik.  As stated above, Defendant cites to medical evidence in an attempt to support the ALJ's treatment of Dr. Tomcik's opinion, but the problem is that the ALJ made no indication as to how he believed Dr. Tomcik's opinion to be inconsistent with the treatment record as a whole, and thus failed to provide good reasons for discounting the opinion.  For these reasons, it cannot be said that the ALJ provided reasons that were sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *See* SSR 96-2p.

It is for these same reasons that the Court finds that the ALJ failed to properly evaluate the opinion of Dr. Zuchouski, a treating source.  As for Dr. Zurchouski's opinion, the ALJ stated:

> In April 2013, another treating source, Sara Zuchouski, M.D., submitted an opinion stating that [Plaintiff] could occasional/rarely make occupational adjustments and personal/social adjustments and can occasionally function intellectually.  The [ALJ] also gives this opinion little weight because it is not supported by the objective or the credible subjective evidence. [sic]

Tr. at 545.  The ALJ provided no further explanation as to the weight afforded to Dr. Zuchouski's opinion.  Here, the ALJ again failed to identify reasons for discounting Dr. Zuchouski's opinion and failed to explain how those reasons impacted the weight afforded to the opinion.  *See Parks*, 413 Fed.Appx. at 864.  Like the argument presented regarding Dr. Tomcik's opinion, Defendant relies on other portions of the ALJ's decision to support his treatment of Dr. Zuchouski's opinion; however, the ALJ failed to identify any of these reasons and failed to make clear the specific reasons he afforded less than controlling weight to Dr. Zuchouski's opinion.

-16-

For the above stated reasons, the Court reverses and remands the instant case to the ALJ for proper evaluation of the opinions provided by Dr. Tomcik and Dr. Zuchouski, and a new RFC finding based upon this analysis if a new RFC finding is so warranted.

### B.  Dr. Jonas' Post-Hearing Report

Plaintiff also argues that the ALJ erred by affording a lesser level of scrutiny to Dr. Jonas' post-hearing report than the level of scrutiny applied to Plaintiff's treating physicians.[4]  ECF Dkt. #12 at 14-16.  Defendant asserts that there is no evidence to support Plaintiff's claim that the ALJ afforded a lower level of scrutiny to Dr. Jonas' opinion.  ECF Dkt. #17 at 10.  As stated above, the Court finds that the ALJ properly discounted Dr. Azem's opinion, and this case is being remanded for proper consideration of the opinions of Dr. Tomcik and Dr. Zuchouski.  Accordingly, Plaintiff's concern that the ALJ afforded a lesser level of scrutiny to Dr. Jonas' post-hearing assessment than the level of scrutiny applied to Plaintiff's treating physician will be remedied by the remand as the ALJ will either afford controlling weight to the opinions of Dr. Tomcik and Dr. Zuchouski, and thus assign greater evidentiary value to these opinions than Dr. Joans' post-hearing report, or provide good reasons for discounting the opinions of Dr. Tomcik and Dr. Zuchouski.  Accordingly, this issue is rendered moot.

### C.  Consideration of the Full Record

Finally, Plaintiff contends that the ALJ failed to consider the full record because he ignored evidence that Plaintiff submitted shortly after her hearing.  ECF Dkt. #13 at 16.  Defendant contends that  Plaintiff's argument mistakes the procedural history of this case, namely, that the evidence in question was submitted to the Appeals Council after the ALJ issued his written decision.  ECF Dkt.

---

[4]Plaintiff briefly contends in a footnote that she was denied due process because she was not afforded a timely opportunity to rebut Dr. Jonas' post-hearing report as Plaintiff's attorney did not receive a copy of the post-hearing report until one was provided by Plaintiff.  ECF Dkt. #13 at 14, n. 4.  However, it appears from the record that Dr. Jonas' post-hearing report (in the form of responses to interrogatories submitted to him by the ALJ) was submitted on April 27, 2014, and that a copy of the post-hearing report was sent to Plaintiff's attorney the following day for review.  Tr. at 809, 1593.  In any event, Plaintiff submitted a response on May 14, 2014, well before the ALJ issued his decision on July 21, 2014, and did not indicate that more time was required to adequately respond to Dr. Jonas' post-hearing report . *Id.* at 812.  Further, Plaintiff fails to identify any error on behalf of Defendant, as the record shows that a copy of Dr. Jonas' post-hearing review was mailed to Plaintiff.  *Id.* at 809.  For these reasons, the Court declines to find a violation of Plaintiff's right to due process.

#17 at 10-11. Continuing, Defendant asserts that the ALJ cannot be faulted for not considering evidence that was not before him, that the evidence was reviewed and made part of the record by the Appeals Council, and that the evidence was found to relate to a time after Plaintiff's date last insured. *Id.* at 11.

Plaintiff's argument is without merit. The Appeals Council properly stated that the medical evidence in question spanned the time period of July 22, 2014, to June 11, 2015. Tr. at 7. The time period during which Plaintiff was eligible for benefits ended on June 30, 2014, her date last insured. Accordingly, the undersigned finds that the portion of the record upon which Plaintiff bases this assignment of error was not before the ALJ when he issued his decision on July 21, 2014, and was not relevant to the decision because the evidence would not impact the decision as to whether Plaintiff was disabled at the last time she met the insured status requirements of the Social Security Act.

## VI. CONCLUSION

For the following reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case to the ALJ for proper evaluation of the opinions of Dr. Tomcik and Dr. Zuchouski, as explained in the instant Memorandum Opinion and Order.

Date: February 10, 2017         */s/George J. Limbert*
                                GEORGE J. LIMBERT
                                UNITED STATES MAGISTRATE JUDGE